IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39697-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DANIELE LEE WILLIAMSON, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Daniele Williamson appeals from a conviction for first degree burglary. She contends the trial court erred when prohibiting a law enforcement officer from testifying that she, at the time of her arrest, commented that she was kidnapped. We agree with Williamson that the question did not call for hearsay evidence, but we rule any error to be harmless error because the witness testified he did not recall any such statement and the jury heard other evidence of Williamson's confused state of mind. We therefore, affirm the conviction. We, nonetheless, because of Williamson's indigency, remand for the vacation of a criminal victim penalty assessment (VPA).

FACTS

The prosecution of Daniele Williamson arises from her entry into the residence of stranger Janet Martin and her odd behavior inside. One evening at 10:00 p.m., after putting her grandchildren to sleep, Janet Martin stepped outside of her home to speak

with her ex-husband on the phone. She left the front door open. While Martin remained outside, Williamson entered Martin's residence. Martin had never seen Williamson before.

Janet Martin raced into her abode and found Daniele Williamson in the living room. Martin confronted Williamson and demanded that she leave. Instead of complying, Williamson turned slowly and ambled to the kitchen. She opened and scrutinized the refrigerator. Martin asked Williamson if she was hungry. Instead of answering, Williamson slowly straightened up, turned, looked at Martin, and slammed the refrigerator door hard enough to rattle items on the top. Martin again commanded Williamson to leave, but Williamson lingered.

Daniele Williamson reconnoitered the kitchen and saw medication boxes on the counter. Williamson grabbed the boxes and began to stuff them into a bag she carried. Janet Martin intercepted the boxes and physically restrained Williamson to stop her from escaping. Williamson kicked Martin in the stomach. Martin demanded Williamson to leave again. Williamson went to the outside door through which she had entered the residence, slammed the door while she remained inside, stood in front of Martin, crossed her arms, and defiantly stared at Martin.

A frightened Janet Martin dialed and spoke to 911. Daniele Williamson swept objects off the dining room table and kitchen counter, broke glassware and pottery, and

threatened Martin with pieces of the shards by displaying the glass. Williamson bore a knife and comb filed to be sharp.

Daniele Williamson scratched, kicked, and bit Janet Martin. She also pulled Martin's hair. Williamson reached for knives in the kitchen. 911 remained on the call for thirteen minutes until law enforcement arrived. When one of the grandchildren entered an adjacent room, Williamson called to the child, claimed to be his mother, and warned him not to take drugs.

Daniele Williamson and Janet Martin still tussled when law enforcement arrived. Williamson then fell limp to the ground and urinated on herself. She mumbled her name, but did not respond to questions from law enforcement about her condition. She struggled to remove her soiled clothes while being handcuffed. Officer Xenon Berkeley, experienced in handling intoxicated and mentally ill persons, found Williamson's behavior odd. Officers attempted to render first aid to Williamson by placing her in a recovery position.

Paramedic Joseph Pearman arrived at Janet Martin's residence to render aid to Daniele Williamson. Williamson ignored the paramedic's questions. Her squirming prevented Pearman from assessing Williamson's condition. Pearman placed Williamson in four-point restraints to facilitate an evaluation. Williamson's respiration was adequate, she possessed full motor control of her eyes, and she lacked visible signs of intoxication. The paramedic could not judge whether Williamson had used other mood-altering

substances.  While being transported by ambulance, Williamson threatened to sue

Pearman and law enforcement officers for assault, kidnapping, and impersonating a first

responder.

## PROCEDURE

The State of Washington charged Daniele Williamson with first degree burglary.

During trial, defense counsel asked Officer Xenon Berkeley if Daniele

Williamson, when confronted, said she was kidnapped.  Officer Berkely responded that

he did not recall any such comment.  After Berkeley answered, the State moved to strike

the answer as hearsay.  The defense responded that it offered the officer's testimony to

show Williamson's delusional state of mind, not for the truth of the matter asserted.  The

defense also argued that the statement qualified for the medical treatment exception to the

hearsay rule.  The trial court sustained the State's objection on the grounds that the

statement constituted self-serving hearsay and was offered for the truth of the matter

asserted within the statement.  The superior court emphasized that the State could not

cross-examine the statement uttered to the law enforcement officer.

The superior court delivered a voluntary intoxication instruction to the jury.  The

jury found Daniele Williamson guilty of first degree burglary.  The trial court imposed an

87-month sentence and a $500 crime victim penalty assessment. The court entered an

order of indigency for purposes of Williamson appealing her conviction.

LAW AND ANALYSIS

On appeal, Daniele Williamson assigns error to the trial court's exclusion of officer Xenon Berkeley's testimony that she stated she had been kidnapped. Williamson also challenges the victim penalty assessment. Finally, on her own, she asserts additional grounds for reversal.

Hearsay Ruling

On appeal, Daniele Williamson assigns error to the trial court's decision to exclude the statement she uttered to the law enforcement officer. She contends the statement was relevant, offered for a nonhearsay purpose, and alternatively fitted within the "statements for medical treatment" hearsay exception. Williamson complains that the exclusion of the testimony deprived her of important evidence of her state of mind at the time of the burglary. Finally, she contends that, because the State carried the burden of proving her intent, the exclusion of the law enforcement officer's testimony about her being delusional and paranoid likely affected the outcome of the trial.

The State concedes that the statement is not hearsay and the trial court erroneously excluded Daniele Williamson's statements. The State argues, however, that the error was harmless. We agree with both positions of the State.

Daniele Williamson sought to introduce evidence that she proclaimed, at Janet Martin's residence, that she was kidnapped. The evidence rules define hearsay:

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

ER 801(c). Williamson uttered her statement of kidnapping out of court. But she did not offer the testimony to prove the truth of what she declared. To the contrary, she presented her statement more for its falsity. She was not being kidnapped or poisoned. The testimony covered her state of mind and whether she could form the intent to commit a crime when entering the home. RCW 9A.52.020. Statements offered to establish the declarant's state of mind, without regard to whether the statement itself is true, are offered for a proper nonhearsay purpose. *State v. Duarte Vela*, 200 Wn. App. 306, 319-20, 402 P.3d 281 (2017).

Under the nonconstitutional harmless error test applied to evidentiary error, the defendant must show a reasonable probability that the error materially affected the outcome of the trial. *State v. Young*, 27 Wn. App. 2d 461, 471, 532 P.3d 629 (2023). Evidentiary error is generally harmless when the error is cumulative with other evidence. *State v. Romero-Ochoa*, 193 Wn.2d 341, 348, 440 P.3d 994 (2019).

We rule the exclusion of the testimony to be harmless for two reasons. First, Officer Xenon Berkeley denied recalling Daniele Williamson uttering such a statement. An accused cannot be prejudiced by the court excluding an out-of-court statement when the witness would not confirm that someone uttered the statement. To the contrary,

Williamson planted a seed in the mind of the jury despite the witness failing to water the seed.

Assuming Officer Xenon Berkeley would have testified that Daniele Williamson said she was kidnapped, similar testimony of a delusion mental condition rendered such testimony cumulative. Paramedic Joseph Pearman testified that Williamson declared she would sue him and law enforcement officers for not only kidnapping, but also assault and impersonating a first responder. She claimed to one of Janet Martin's grandchildren that she was his mother and directed him not to take drugs. Police officers testified to Williamson becoming unresponsive and urinating. First responders and Martin testified to minutes of odd behavior of Williamson.

### Crime Victim Penalty

Daniele Williamson asks this court to vacate her $500 victim penalty assessment because of her indigency. The State agrees. So do we. Beginning on July 1, 2023, Washington courts may not impose VPAs on a defendant "if the court finds that the defendant is indigent at the time of sentencing." FINAL B. REP. ON ENGROSSED SUBSTITUTE H.B. 1169, at 2, 68th Leg., Reg. Sess. (Wash. 2023); *see* LAWS OF 2023, ch. 1169, §§ 1, 4.

Additionally, "[u]pon motion, the court must waive any crime victim penalty assessment previously imposed against an adult defendant who does not have the ability to pay. A person does not have the ability to pay if the person is indigent." FINAL B.

REP. ON ENGROSSED SUBSTITUTE H.B. 1169, at 2, 68th Leg., Reg. Sess. (Wash. 2023);

*see* LAWS OF 2023, ch. 1169, §§ 1, 4.

Statement of Additional Grounds

We reject three additional grounds that Daniele Williamson forwards. First,

Williamson faults the superior court for failing to conduct an omnibus hearing. She

contends CrR 4.5 and LCrR 4.5 demanded such a hearing.

We agree that CrR 4.5 demands such an omnibus hearing. The rule provides no

sanction for a failure to conduct a hearing, however. Daniele Williamson cites no case

law on the remedy for the failure to conduct a hearing.

RAP 10.10(c)

> Reference to the record and citation to authorities are not necessary
> or required, but the appellate court will not consider a defendant's
> statement of additional grounds for review if it does not inform the court of
> the nature and occurrence of alleged errors. Except as required in cases in
> which counsel files a motion to withdraw as set forth in RAP 18.3(a)(2), the
> appellate court is not obligated to search the record in support of claims
> made in a defendant's statement of additional grounds for review. Only
> documents *that* are contained in the record on review should be attached or
> referred to in the statement.

Daniele Williamson contends she lacked access to discovery evidence and her

mother could not attend trial. She suggests that a disagreement over her offender score

could have been resolved at an omnibus hearing. Williamson fails to identify what

discovery the State withheld and how the discovery materials would have benefited her

defense. She does not explain how an omnibus hearing would have allowed her mother

8

to attend trial. Finally, she does not understand that the parties do not discuss sentencing matters such as an offender score until after a conviction and an omnibus hearing occurs before trial. In short, Williamson shows no prejudice by any omission of an omnibus hearing.

Second, Daniele Williamson argues that the trial court erred by not requiring Joe Griffin, a private investigator hired by defense counsel, to interview Dominic Tolson, a witness for the defense. Nevertheless, she neither cites to the record nor to caselaw to support this argument. Williamson fails to recognize that the trial court typically performs no role in identifying witnesses that a private investigator should interview. Presumably, no one ever asked the trial court to order Griffin to interview Tolson. Williamson fails to explain what information Tolson possessed and how that information would have exculpated her.

Third, Daniele Williamson argues that, because a prospective juror informed the court during jury selection that he knew her, the trial court erred in dismissing her request for a mistrial. She provides no citations to the record to support this argument. Williamson also fails to indicate whether the juror expressed he could be impartial despite knowing Williamson.

## CONCLUSION

We affirm Daniele Williamson's conviction for first degree burglary. We remand to the trial court to strike the $500 victim penalty assessment.

9

No. 39697-5-III
*State v. Williamson*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:


_____
Cooney, J.

_____
Pennell, J.

10